## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.

Phillip Jones,

    Defendant.

_____/

Case No. 93-81138

Hon. Matthew F. Leitman

### United States' Response Opposing
### the Defendant's Motion for Compassionate Release

Defendant Phillip Jones negotiated a drug deal to be paid for, in part, with firearms. He committed this offense shortly after getting out of prison for another drug offense. Because of his prior conviction, Jones was eligible for a sentencing enhancement pursuant to Section 851, which doubled the statutory mandatory minimums for Counts 1, 3 and 4 to 120 months for each. The quantity of cocaine and cocaine base was determined, reviewed and affirmed. Jones's conviction on Count 5 of possessing a machine gun in furtherance of a drug crime mandated a 30-year sentence, consecutive to the 10-year drug offenses. His conviction and sentence have been appealed, affirmed and affirmed on collateral review.

1

Jones began serving his current sentence on August 14, 1995. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His motion should be denied.

Jones does not qualify for compassionate release; he does not satisfy the substantive requirements for compassionate release. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Even assuming a defendant facing a heightened risk from Covid-19 could satisfy the criteria in § 1B1.13(1)(A) & cmt. n.1, Jones does not have a condition that places him at higher risk from Covid-19. Jones's offense and criminal history make him a danger to the community, which precludes release under USSG § 1B1.13(2), because his criminal history shows he is undeterred by incarceration and could lapse into the same conduct he did when he was released from his prior offense. And the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—likewise do not support release because drug trafficking combined with firearms – the possession and exchange of them during drug trafficking – are inherently dangerous. Moreover, Jones's reliance on the same arguments he makes in his pending motion for reduction in sentence pursuant to the First Step Act continue to be of no avail to him in the compassionate release context. *See* ECF No. 343: Jones's Motion pursuant to Section 404(b) of the First Step Act,

PageID.2125; ECF No. 355: Supplemental Brief, PageID.2194. The Court should deny his motion.

The Bureau of Prisons has also taken significant steps to protect all inmates, including Jones, from Covid-19. Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). And the Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement. As of September 21, 2020, this process has already resulted in at least 7,680 inmates being placed on home confinement. *See* BOP Covid-19 Website. Especially given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 961 F.3d at 845—the Court should deny Jones's motion for compassionate release.

## Background

In 1995, a jury convicted Jones of four charged counts: conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base (Count One); distribution of cocaine base, aiding and abetting (Count Three); attempt to possess with intent to distribute cocaine, aiding and abetting (Count Four); and use and carrying of firearms during and in relation to a drug trafficking crime, aiding and

3

abetting (Count Five). ECF No. 64: Verdict Form. Based on his prior convictions, Jones was eligible for a sentencing enhancement pursuant to 21 U.S.C. § 851. Prior to trial, the government filed its notice of sentencing enhancement. ECF No. 61: Notice of 851 Sentencing Enhancement.

The District Court determined that the quantity of drugs attributable to Jones was 2.2 kilograms of cocaine, more specifically, one kilogram of cocaine and 12.2 grams of cocaine base. *United States v. Jones*, 102 F.3d 804, 810 (6th Cir. 1996). The district court sentenced Jones to concurrent ten-year terms of imprisonment on each of the drug charges, a consecutive thirty-year term on the firearms charge, and eight years of supervised release. ECF No. 65: Judgment and Commitment Order. The Court of Appeals affirmed Jones's conviction and sentence on direct appeal. *Jones,* 102 F.3d at 810.

Jones began serving his prison sentence on August 14, 1995; however, he was given credit for pretrial detention of 554 days, and is currently incarcerated at Milan FCI, where currently no inmate is positive for Covid-19. *See*  Exhibit 1: BOP's Public Information. He is 53 years old, and his projected release date is February 10, 2028. His only underlying medical conditions are elevated blood pressure readings, but no diagnosis of hypertension and no medications prescribed, as well as a one-time reference to asthma in July of 2019, again with no medications or limitations described. *See* Exhibit 2: Sealed Medical Records 2020, pp. 4, 19; Exhibit 3: Sealed

4

Medical Records 2019. Nevertheless, Jones has moved for compassionate release, citing his medical conditions and the Covid-19 pandemic. Jones filed a request for a Reduction in Sentence (RIS) on June 5, 2020. *See* Exhibit 4: RIS Request. The BOP denied Jones's request on June 29, 2020, indicating that Jones did not present any extraordinary or compelling reason in support of his request, and BOP would not grant a generalized request based on a generalized fear of Covid-19. *See* Exhibit 5: BOP's Denial of RIS Request. It has been more than 30 days since BOP denied Jones's RIS; consequently, he has exhausted his remedies with BOP as to compassionate release and is properly before the Court. Here, Jones asks for a reduction in sentence based on compassionate release to time served.

## Argument

### I.     The Bureau of Prisons has responded to Covid-19 by protecting inmates and increasing home confinement.

#### A.     The Bureau of Prisons' precautions have mitigated the risk from Covid-19 within its facilities.

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). For over almost a decade, the Bureau of Prisons has maintained a detailed protocol for responding to a pandemic. Consistent with that protocol, the Bureau of Prisons began planning for Covid-19 in January 2020. *Wilson*, 961 F.3d at 833–34.

5

On March 13, 2020, the Bureau of Prisons started modifying its operations to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities. *Id.*; *see* BOP Covid-19 Modified Operations Website. Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 961 F.3d at 834. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *Id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id.* Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* BOP FAQs: Correcting Myths and Misinformation. Staff and contractors are screened for symptoms, and contractors are only permitted to access a facility at all if performing essential service. *Wilson*, 961 F.3d at 834. Social visits have been suspended to limit the number of people entering the facility and interacting with inmates. *Id.* But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500

6

minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times. Currently at Milan FCI, no inmate is positive for Covid-19. Tragically, three inmates at Milan FCI have died because of Covid-19; however, the most recent death there was April 24, 2020, about five months ago.

### B. The Bureau of Prisons is increasing the number of inmates who are granted home confinement.

The Bureau of Prisons has also responded to Covid-19 by increasing the placement of federal prisoners in home confinement. Recent legislation now temporarily permits the Bureau of Prisons to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement" during the Covid-19 pandemic. Coronavirus Aid, Relief, and Economic Security Act (CARES Act) § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Attorney General has also issued two directives, ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing Covid-19 pandemic." (03-26-2020 Directive to BOP, at 1; *accord* 04-03-2020 Directive to BOP, at 1). The directives require the

7

Bureau of Prisons to identify the inmates most at risk from Covid-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1).

The Bureau of Prisons' efforts on this point are not hypothetical. Over 7,680 federal inmates have been granted home confinement since the Covid-19 pandemic began, and that number continues to grow. BOP Coronavirus FAQs. As the Sixth Circuit recently stressed, these efforts show that "[t]he system is working as it should": "A policy problem appeared, and policy solutions emerged." *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).

This policy solution is also tailored to the realities of the Covid-19 pandemic. As the Attorney General's directives have explained, the Bureau of Prisons is basing its home-confinement decisions on several factors:

> 1.) Each inmate's age and vulnerability to Covid-19;
>
> 2.) Whether home confinement would increase or decrease the inmate's risk of contracting Covid-19; and
>
> 3.) Whether the inmate's release into home confinement would risk public safety.

(03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP). These criteria account for justifiable concerns about whether inmates "might have no safe place to go upon release and [might] return to their criminal activities," as well as "legitimate concerns about public safety." *Wilson*, 961 F.3d at 845.

8

The Bureau of Prisons, after all, cannot open its facilities' gates indiscriminately and unleash tens of thousands of convicted criminals, en masse. *See id.* It must focus on the inmates who have the highest risk factors for Covid-19 and are least likely to engage in new criminal activity. This is true not just to protect the public generally, but to avoid the risk that a released defendant will bring Covid-19 back into the jail or prison system if he violates his terms of release or is caught committing a new crime. *See* 18 U.S.C. § 3624(g)(5); 34 U.S.C. § 60541(g)(2).

The Bureau of Prisons must also balance another important consideration: how likely is an inmate to abide by the CDC's social-distancing protocols or other Covid-19-based restrictions on release? Many inmates—particularly those who have been convicted of serious offenses or have a lengthy criminal record—been already proven unwilling to abide by society's most basic norms. It is thus important to evaluate "how . . . released inmates would look after themselves," *Wilson*, 961 F.3d at 845, including whether a particular inmate would adhere to release conditions and social-distancing protocols during the pandemic. If a prisoner would be unlikely to take release conditions or Covid-19 precautions seriously, for instance, he would also be far more likely than the general public to contract and spread Covid-19 if released.

Finally, the Bureau of Prisons' home-confinement initiative allows it to marshal and prioritize its limited resources for the inmates and circumstances that

9

are most urgent. For any inmate who is a candidate for home confinement, the Bureau of Prisons must first ensure that his proposed home-confinement location is suitable for release, does not place him at an even greater risk of contracting Covid-19, and does not place members of the public at risk from him. It must assess components of the release plan, including whether the inmate will have access to health care and other resources. It must consider myriad other factors, including the limited availability of transportation right now and the probation department's reduced ability to supervise inmates who have been released. All of those decisions require channeling resources to the inmates who are the best candidates for release.

Those types of system-wide resource-allocation decisions are difficult even in normal circumstances. That is why Congress tasked the Bureau of Prisons to make them and has not subjected the decisions to judicial review. 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *United States v. Patino*, No. 18- 20451, 2020 WL 1676766, at *6 (E.D. Mich. Apr. 6, 2020) ("[A]s a general rule, the Court lacks authority to direct the operations of the Bureau of Prisons."). It is especially true now, given the Bureau of Prisons' substantial and ongoing efforts to address the Covid-19 pandemic.

## II.   The Court should deny Jones's motion for compassionate release.

Jones's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). And as the Sixth Circuit recently held, this statutory exhaustion requirement is mandatory. *Alam*, 960 F.3d at 832–36.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

11

As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

### A.   Jones is not eligible for compassionate release under the mandatory criteria in USSG § 1B1.13.

Even though Jones has exhausted his administrative remedies, compassionate release would be improper. Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well as developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C.

§ 994(t). The compassionate-release statute thus permits a sentence reduction only when "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Commission fulfilled Congress's directive in USSG § 1B1.13, compliance with that policy statement is mandatory for any defendant seeking compassionate release under § 3582(c)(1)(A). The Supreme Court has already reached the same conclusion for compliance with USSG § 1B1.10 under 18 U.S.C. § 3582(c)(2), based on the statutory language there. *Dillon v. United States*, 560 U.S. 817, 827 (2010). And the statutory language in § 3582(c)(1)(A) is identical to the language in § 3582(c)(2). *Compare* § 3582(c)(1)(A) (requiring that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"), *with* § 3582(c)(2) (same). When Congress uses the same language in the same statute, it must be interpreted in the same way. *United States v. Marshall*, 954 F.3d 823, 830 (6th Cir. 2020). In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014) (citing *Dillon*, 560 U.S. 817); *accord United States v. Saldana*, 807 F. App'x 816, 819–20 (10th Cir. 2020).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive

requirements for release. *Saldana*, 807 F. App'x at 819–20. Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50. USSG § 1B1.13 cmt. n.1.

The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Jones and other inmates. *See Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). Thus, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 961 F.3d at 845.

Jones's age and non-chronic medical conditions likewise do not satisfy the requirements for release in USSG § 1B1.13 cmt. n.1, even when considered in combination with the Covid-19 pandemic. Jones has had some elevated blood

14

pressure readings, but he has not been diagnosed with hypertension and has not been prescribed medications. The same is true of one reference to asthma in July of 2019; he has not been prescribed any medication, and he is not monitored for asthma. Both of these conditions are manageable; neither is chronic, and neither is listed by the CDC as a risk factor for Covid-19. *See* Exhibits 2 and 3. Jones's age and medical records also establish that he does not have a condition that is known to place him at a higher risk of severe illness from Covid-19. *See* CDC Risk Factors (as updated) (identifying the confirmed medical conditions that increase someone's risk from Covid-19). So whether considered alone or in combination with the Covid-19 pandemic, Jones's age and medical condition do not satisfy the initial eligibility criteria for release under USSG § 1B1.13 cmt. n.1. *See United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5–*6 (E.D. Mich. May 15, 2020).

Jones also remains ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As with the other requirements in § 1B1.13, this prohibition on releasing dangerous defendants applies to *anyone* seeking compassionate release. 18 U.S.C. § 3582(c)(1)(A) (requiring that release be "consistent with" § 1B1.13); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (confirming that a released defendant must "not represent a danger to the safety of any other person or

the community"). Although a court must also evaluate the defendant's dangerousness when balancing the § 3553(a) factors, dangerousness alone is a per se bar to release under USSG § 1B1.13(2). *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020); *United States v. Oliver*, No. 2:17-cr-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020).

An evaluation of dangerousness under § 3142(g)—which § 1B1.13(2) references for its dangerousness determination—requires a comprehensive view of community safety, "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). Indeed, even when considering *pretrial* detention under § 3142(g), "[t]he concept of a defendant's dangerousness encompasses more than merely the danger of harm involving physical violence." *United States v. Williams*, No. 20-1413, 2020 WL 4000854, at *1 (6th Cir. July 15, 2020) (citing *United States v. Vance*, 851 F.2d 166, 169–70 (6th Cir. 1988)). That reasoning applies even more strongly post-judgment, when the defendant's presumption of innocence has been displaced by a guilty plea or jury's verdict and when "the principle of finality" becomes "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Section 1B1.13(2) is thus a significant hurdle to release. It bars the release of violent offenders. It bars the release of most drug dealers, "even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608

16

F.3d 939, 947–48 & n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *Knight*, 2020 WL 3055987, at \*3. It bars the release of defendants whose offenses involved minor victims or child pornography. *See United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at \*3 (6th Cir. July 8, 2020).

Because Jones's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A). Trafficking in cocaine, cocaine base, and using firearms as part of a drug transaction is dangerous conduct. Two of the firearms were semi-automatic, and another was a hand gun. Yet another firearm was a prohibited machine gun. This conduct was on the heels of a prior drug offense. While BOP has assessed Jones as low risk for recidivism, it offers no rationale for that determination. It could be that his age upon release in 2028 reduces the likelihood that he would re-offend. *See* Exhibit 6: BOP Recidivism Determination. Jones has had disciplinary issues in the past, some 12 offenses for which he was penalized. *See* Exhibit 7: Discipline Records (under seal). While Jones has not had recent disciplinary issues, he has exhibited a willingness to break the rules despite losing privileges and being sanctioned for his conduct. It is likely this pattern could continue if he is released.

Jones is not eligible for compassionate release.

**C.     The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.**

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release). So even if the Court were to find Jones eligible for compassionate release, the § 3553(a) factors should still disqualify him.

Jones argues that the Court can consider release based on the same arguments he makes in favor of a reduction in sentence under Section 404(b) of the First Step Act – the § 924(c) consecutive sentence was too harsh, and if Jones were convicted today of the same offenses, he would not be sentenced to a 30-year term of imprisonment. He relies, in part, on an opinion and order entered by Judge Steeh in *United States v. Baker,* Case No. 10-20513, ECF No. 92. In *Baker,* Judge Steeh noted that he considered similar arguments under the § 3553(a) factors when deciding compassionate release; however, he did not immediately reduce the sentence.

18

Instead, Judge Steeh stated he would conduct a hearing to consider the case further. While this Court could look to Judge Steeh's approach and deem it persuasive, it is not binding or published authority. If this Court follows suit and decides to take into account the issues Jones raised in his pending First Step Act motion when considering compassionate release under § 3553(a), the Court should not conflate the two and order compassionate release when it could not get to the same result on the merits of the pending § 404(b) First Step Act motion.[1]

## III.   If the Court were to grant Jones's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Jones's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

**Conclusion**

Jones's motion should be denied.

Respectfully submitted,

Matthew Schneider
United States Attorney

s/Julie A. Beck
Julie A. Beck
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001

---

[1] The government incorporates by reference its briefs filed opposing Jones's pending motion for reduction in sentence pursuant to Section 404(b) of the First Step Act. *See* ECF Nos. 351, 357.

Detroit, MI 48226
313-226-9717
julie.beck@usdoj.gov
[P53291]

Dated: September 21, 2020

<u>Certificate of  Service</u>

I hereby certify that on Monday, September 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

Andrew Wise


<u>*s/Julie A. Beck*</u>
Julie A. Beck
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9717
Julie.Beck@usdoj.gov